IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

DERIC DEAN,                          )
                                     )
       Plaintiff,                    )
                                     )
v.                                   )    Case No. 10-cv-433-CVE-PJC
                                     )
THERMWOOD CORPORATION,               )
                                     )
       Defendant.                    )

**OPINION AND ORDER**

Defendant Thermwood Corporation ("Thermwood") has filed a Motion for Summary Judgment/Motion to Strike Expert. [Dkt. No. 54]. The Motion to Strike Expert ("Motion to Strike") has been referred to the undersigned for determination.[1] A telephonic hearing was conducted on January 6, 2012. For the reasons set forth below, the Motion to Strike Expert is **GRANTED**.

This is a manufacturer's product liability case. Plaintiff Deric Dean ("Plaintiff" or "Dean") asserts that in April 2006 while working at ICES Corporation ("ICES") in Cleveland, Oklahoma, the router machine he was using malfunctioned and injured him. That machine was manufactured by Defendant Thermwood.[2] [Dkt. No. 20]. The Thermwood router is a computer-controlled machine and the computer control

---

[1] The question of admissibility of Plaintiff's expert testimony must be determined before the summary judgment can be decided since under Fed. R. Civ. P. 56 the Court may consider "only the evidence that would be available to the jury." *Argo v. Blue Cross and Blue Shield of Kansas, Inc.*, 452 F.3d 1193, 1199 (10th Cir. 2006).

[2] ICES manufactures aircraft and aerospace components. The machine at issue is a Thermwood 5 Axis CNC Router used to cut, trim and shape various materials.

1

program was installed by the manufacturer. [*Id.*, ¶ 11& 11B]. Plaintiff contends that at the time of his injury the Tool Length Offset ("TLO") program had been loaded and controlled the spindle on the machine.³ [Dkt. No. 20, ¶ 11]. Plaintiff contends that his injuries were caused by a malfunction in the machine's computer control program that allowed the router tool to continue spinning while the machine was in TLO mode. *Id.* He was injured when he attempted to manually replace the router tool. Defendant contends that the machine was *not* in TLO mode at the time of the accident and that the machine in question is not defective. [Dkt. No. 22, ¶ 11].

Dean has identified Bradley Briscoe ("Briscoe") as an expert witness on his behalf. Briscoe is the Plaintiff's only expert witness for products liability issues. [Dkt. No. 74 at 1]. According to Briscoe, before Dean attempted to replace the router tool he engaged the "E-stop" (emergency stop) button, then reset the E-stop, and at this point the spindle on the machine should not have been spinning. According to Briscoe, since the spindle *was* spinning, the machine must have been defective.

Thermwood's Motion to Strike seeks relief on two grounds: First, that Briscoe lacks the qualifications necessary to be an expert witness. Second, that his opinions do not meet the requirements of *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), regarding expert testimony. The Court rejects Thermwood's first premise, but grants the motion based on the second argument.

---

³ Tool Length Offset ("TLO") mode is the status of the machine when it automatically picks up a tool needed for a specific job and measures it for appropriate length. In TLO mode, the spindle that holds the cutting tool should not be spinning.

# I.
## *Applicable Legal Standard*

Rules 702 and 703 of the Federal Rules of Evidence provide the starting point for analyzing Briscoe's proposed testimony. Rule 702 concerns the qualifications and methodology of an expert; Rule 703 focuses on the underlying data supporting the expert's proposed opinions. Rule 702 provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> **(a)** the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> **(b)** the testimony is based on sufficient facts or data;
>
> **(c)** the testimony is the product of reliable principles and methods; and
>
> **(d)** the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.

Rule 702 codifies *Daubert* and provides the standard for admissibility of expert opinion testimony. The Court acts as a gatekeeper in determining whether expert opinion testimony will be admitted. In this role, the Court must determine whether the provisions of Rule 702(a)-(d) have been satisfied. *Freeman Family Ranch, LTD. v. Maupin Truck Sales, Inc.*, 2010 WL 908665, at *2 (W.D.Okla. March 9, 2010). Thus, when faced with a proffer of scientific, technical or other specialized knowledge:

> [T]he trial judge must determine at the outset, pursuant to Rule 104(a), whether the expert is proposing to testify to (1) scientific knowledge that (2) will assist the trier of fact to understand or determine a fact in issue.

> This entails a preliminary assessment of whether the reasoning or
> methodology underlying the testimony is scientifically valid and of
> whether that reasoning or methodology properly can be applied to the
> facts in issue.

*Daubert*, 509 U.S. at 592-593 (footnote omitted).

Rule 703 provides:

> An expert may base an opinion on facts or data in the case that the expert
> has been made aware of or personally observed. If experts in the
> particular field would reasonably rely on those kinds of facts or data in
> forming an opinion on the subject, they need not be admissible for the
> opinion to be admitted. But if the facts or data would otherwise be
> inadmissible, the proponent of the opinion may disclose them to the jury
> only if their probative value in helping the jury evaluate the opinion
> substantially outweighs their prejudicial effect.

Fed. R. Evid. 703.

As a preliminary matter, the Court addresses the applicability of *Daubert* in the context of this case. Relying on *Compton v. Subaru of America, Inc.*, 82 F.3d 1513 (10th Cir. 1996), Plaintiff contends that *Daubert* has no application here since Briscoe's proposed testimony is based "solely on experience or training," not scientific methodology or technique.[4] *Plaintiff's Response to Motion for Summary Judgment/Motion to Strike Expert*, [Dkt. No. 74, at 5-6]. Plaintiff contends that "Since the testimony of Plaintiff's expert witnesses does not involve a particular methodology or technique, or a

---

[4] The U.S. Supreme Court has rejected *Compton*, at least insofar as it has rejected the idea that there is any difference in the Court's gatekeeper function when dealing with expert opinions based on scientific knowledge versus opinions based on experience or training. *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 141 (1999) ("We conclude that *Daubert's* general holding – setting forth the trial judge's general 'gatekeeping' obligation – applies not only to testimony based on 'scientific' knowledge, but also to testimony based on 'technical' and 'other specialized' knowledge."). *See Smith v. Ingersoll-Rand Co.*, 214 F.3d 1235 (10th Cir. 2000), where the Tenth Circuit expressly states that *Compton* was "overruled" by *Kumho*. *Id.* at 1244.

novel scientific theory, but is based upon the experts' education, training and professional experience, then *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, simply doesn't apply." *Id.* at 6.

The Court disagrees. Based upon the Supreme Court's opinion in *Kumho*, there is no question that *Daubert's* general gatekeeping obligation applies to cases such as this where the proposed expert is testifying from his experience or training. *Kumho*, 526 U.S. at 141. Therefore, prior to admitting Briscoe's expert testimony, "the court must insure the testimony 'is not only relevant, but reliable'." *Id.* at 147 (*quoting Daubert*, 509 U.S. at 589); *Ingersoll-Rand*, 214 F.3d at 1245.

The reliability of expert testimony is determined by looking at "whether the reasoning or methodology underlying the testimony is scientifically valid." *Daubert*, 509 U.S. at 592. The relevance determination is decided by "whether that reasoning or methodology properly can be applied to the facts in issue." *Id.* at 592-93.

*Daubert* identifies several factors that a Court may consider in making its reliability determination: (1) whether the expert's theory or technique can be and has been tested, (2) whether the theory or technique has been subjected to peer review and publication, (3) the known or potential rate of error of the technique or theory, and (4) the general acceptance of the theory or technique. *Id.* at 592–94. This list is not exclusive and no one factor or combination of factors is dispositive. The trial court has broad discretion to consider other factors in determining expert reliability. *Id.* at 594; *see also Kumho,* 526 U.S. at 152 (1999) ("the trial judge must have considerable leeway in

5

deciding in a particular case how to go about determining whether particular expert testimony is reliable").

A party sponsoring expert testimony "need not prove that the expert is undisputably correct or that the expert's theory is generally accepted in the scientific community. Instead, the [party] must show that the method employed by the expert in reaching the conclusion is scientifically sound and that the opinion is based on facts which sufficiently satisfy Rule 702's reliability requirements." *Freeman Family Ranch*, 2010 WL 908665, at *2 (quoting *Truck Ins. Exch. v. Magnetek, Inc.*, 360 F.3d 1206, 1210 (10th Cir.2004) (internal quotations and citations omitted)).

## II.
### *Discussion:*
### *Briscoe's Qualifications and Expert Opinions*

Briscoe has studied mechanical engineering, although he has not received a degree. [Dkt. No. 71-2, at p. 5]. He has more than 10 years' operational experience with computer-controlled machines, including Thermwood 5-axis machines.

In his deposition, Briscoe listed six opinions he would sponsor at trial:

- First, that the Thermwood machine was defective and unreasonably dangerous beyond the contemplation of the average user.

- Second, that either the machine's software or hardware was defective and allowed the machine to operate after the emergency stop ("E-stop") button had been pushed.

- Third, that the defect was present when the machine left Thermwood and neither the machine software nor hardware was accessible to anyone other than Thermwood.

6

- Fourth, if Thermwood believed that the tool lock-out switch should be activated during manual tool changes, then the operator should not be able to perform a manual tool change with the lock-out switch in the off position.

- Fifth, that the tool lock-out switch is neither properly positioned nor clearly marked with a warning that the switch must be activated before manual tool change.

- Sixth, that the machine should be designed to effect an emergency stop if the spindle is turning when the operator attempts a manual tool change.

[Deposition of Bradley Briscoe, Dkt. No. 71-1, at pp.12-14].

Briscoe's opinions are based on a review of Plaintiff's deposition in his worker's compensation case and in this action, a report by Dr. Robert Block (an earlier expert for Plaintiff), videotapes and photos of the subject Thermwood router and a review of the machine's training guide and operator's manual. [Dkt. No. 71-2]. Briscoe did not physically examine the machine which injured Plaintiff and did not try to duplicate the sequence of events that Plaintiff testified preceded his accident. [Dkt. No. 71-1, p. 22, line 23 to p. 23, line 1].

**A. Briscoe's Expertise.**

Thermwood first challenges Briscoe's qualifications as an expert. Thermwood notes that Briscoe (1) has no college degree, (2) was retained by Plaintiff through a witness locating service, and (3) is serving as an expert for the first time in a legal case. [Dkt. No. 54, at 2]. None of these assertions, alone or in conjunction with one another, provide a sufficient basis to disqualify Briscoe as a possible expert witness. While they

could conceivably affect the weight to be given to Briscoe's opinions, they do not, standing alone, render his opinions inadmissible.

First, Fed. R. Evid. 702 outlines who may be qualified as an expert. A college degree is not a requirement for an expert witness. Rule 702 states that one may be qualified as an expert "by *knowledge*, *skill*, *experience*, *training*, or education." (emphasis added). Briscoe's expertise is based on his knowledge and experience as a machinist. A broad range of knowledge, skills, and training can qualify one as an expert. *In re Paoli Railroad Yard PCB Litigation*, 35 F.3d 717, 741 (3d Cir. 1994), *cert. denied*, 513 U.S. 1190 (1995). Qualifications for expert testimony under Rule 702 are very broad and are liberally construed. *Ontiveors v. Danek Medical Group, Inc.*, 1999 WL 1129651, at *3 (D.Utah 1999) (*citing Paoli*, 35 F.3d at 741). Briscoe's lack of a college degree does not disqualify him from testifying as an expert.

Second, the manner in which Plaintiff located Briscoe as a possible witness is clearly irrelevant to his expert qualifications. Finally, Briscoe's lack of prior experience as an expert does not preclude him from being an expert in this case. Every expert must have a first case. The Court concludes that the grounds cited by Defendant do not, without more, preclude Briscoe from offering expert testimony if his opinions meet the relevance/reliability requirements of *Daubert* and *Kumho*.

**B. Reliability and Relevance of Briscoe's Testimony.**

To determine the admissibility of Briscoe's expert testimony, pursuant to *Daubert*, *Kumho*, and Fed. R. Evid. 702, the Court must examine the methodology and reliability of the process the expert used to reach his conclusions.

8

### (1) General Principles of Scientific/Technical Methodology

Scientific or technical method is generally understood to involve the testing of a hypothesis or theory to determine its validity. *See* Federal Judicial Center, Reference Manual on Scientific Evidence, 39-45 (3d ed. 2011). It is a process of applying scientific or technical knowledge to a problem or set of facts. That process then informs the expert's conclusions or opinions which he seeks to sponsor through his testimony. *See Daubert*, 509 U.S. at 593 ("Scientific methodology today is based on generating hypotheses and testing them to see if they can be falsified; indeed, this methodology is what distinguishes science from other fields of human inquiry." (*quoting* Michael D. Green, 86 Nw.U.L.Rev. 643, 645 (1992)); Karl Popper, *Conjectures and Refutations: The Growth of Scientific Knowledge* 37 (5th ed. 1989).

It is not necessary in all cases that the scientific or technical methodology chosen include testing, *Bitler v. A.O. Smith Corp.*, 400 F.3d 1227, 1236 (10th Cir. 2004); however, whatever reasoning or methodology the expert uses must demonstrate a connection between the expert knowledge and the issues at hand. There must be some rational method of bringing one's expertise to bear on a question and, thereby, formulating an objective answer to that question. Rule 702's "helpfulness" standard "requires a valid … connection to the pertinent inquiry as a precondition to admissibility." *Kumho*, 526 U.S. at 149 (*quoting Daubert*, 509 U.S. at 592).

Expert testimony should help the jury understand the evidence or decide a fact in issue. *United States v. DiDomenico*, 985 F.2d 1159, 1163 (2d Cir. 1993). Where the

proffered expert testimony's "factual basis, data, principles, methods, or their application are called sufficiently into question … the trial judge must determine whether the testimony has a 'reliable basis in the knowledge and experience of [the relevant] discipline.'" *Kumho*, 526 U.S. at 149).

An expert cannot simply offer a conclusory opinion that is not tied to specific facts and an identifiable methodology.

> Conclusory opinions by designated experts lack the requisite evidentiary reliability mandated by Rule 702 because they fail to set forth a discernible methodology. Neither *Daubert* nor the Federal Rules of Evidence "requires a district court to admit opinion evidence which is connected to existing data only by the *ipse dixit* of the expert."

*Gen. Star Indem. Co. v. Sherry Brooke Revocable Trust*, 243 F.Supp.2d 605, 626 (W.D.Tex. 2001) (*quoting General Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997)). *See also Viterbo v. Dow Chemical Co.,* 826 F.2d 420, 424 (5th Cir. 1987).

Where an expert bases his opinions on his experience rather than scientific testing, he still must explain how the experience informs his opinions. *See Interplan Architects, Inc. v. C.L. Thomas, Inc.*, 2010 WL 4065465, at *18 (S.D.Tex. Oct. 9, 2010) (Court barred proposed testimony because expert failed to show "how his background experience has directed his analysis of the present case.") "Without more than credentials and a subjective opinion, an expert's testimony that 'it is so' is not admissible." *Viterbo*, 826 F.2d at 424.

**(2) Briscoe's Methodology.**

Thermwood attacks the validity of Briscoe's proffered expert opinions, stating that Briscoe:

10

> [C]annot identify a specific defect in the machine, does not know how it may have malfunctioned, could not reproduce the alleged defect, conducted no testing, and merely concludes that the defect must have been in the hardware or the software because otherwise the incident would not have occurred.

[Dkt. No. 54, at 2].

Briscoe concedes that he cannot identify a specific defect in either the computer software or hardware of the Thermwood machine [Dkt. No. 74, at 3]; however, Plaintiff says that Briscoe can testify that there must be a defect "in one or the other" to permit the spindle to turn under the circumstance described by the Plaintiff. [*Id.*]. Briscoe also admits that the only evidence he has that the Thermwood machine was not operating correctly is from Plaintiff's account of his actions before the accident. [*Id.* at 5].

**(a) Experience as Methodology.**

Briscoe stated in his deposition that his methodology consists solely of his years of experience using machines similar to the Thermwood machine at issue.

> Q. You're basically saying look, there was an injury that occurred in a given state as testified to by Mr. Dean?
>
> A. Yes.
>
> Q. And that injury should not have occurred in that state, correct?
>
> A. Absolutely, that machine should not have been turning.
>
> Q. Right. Therefore the machine was defective?
>
> A. Yes.
>
> Q. Okay. I mean, is that the methodology that you have used to come up with your opinions here?

11

> A. My opinion is based on the fact that I'm an expert in using these types of machines, machines like them; 3 Axis machines, 5 Axis machines. They all have similar threads that run through them in terms of what I see as reasonable operating parameters and safety parameters, and this machine did not meet any of those expectations in this situation. That machine is dangerous in certain circumstances. It has a very high RPM rate. It's very sharp. That operator and that user needs to know and to be able to trust that that machine is not turning when he's interacting with it, especially when he has put it in a standby state. A standby state is regarded by all users as a safe state.
>
> Q. **Is there any other methodology that you've employed to render your opinions here today other than what we've discussed?**
>
> A. **The only methodology I'm using is just my years of experience.**

[Dkt. No. 71-1, p. 44, line 21 to p. 46, line 5 (emphasis added)].

*Daubert* requires more than this in order to verify that a bona fide scientific/technical methodology has been employed. Briscoe has testified that his "methodology" does not meet *Daubert's* standards; *i.e.*, that the technique has been tested, subjected to peer review, has an acceptable error rate, and is a generally accepted methodology. *Daubert*, 509 U.S. at 592-94.

> Q. Do you know whether that methodology that you've relied on for these opinions has been used in other circumstances to identify defects?
>
> A. I can't testify to anything specific along that line.
>
> Q. Has anybody trained you in that methodology?
>
> A. I've been trained in safety around the machines.
>
> Q. Have you been trained in that methodology?
>
> A. No.

> Q. Do you know whether that methodology has been peer reviewed in any studies?
>
> A. I don't know.
>
> Q. Okay. Do you know whether it's been peer reviewed?
>
> A. I don't read journals.
>
> Q. Do you know whether the methodology that you've relied upon is accepted in the scientific community to identify a defect with specificity on a piece of equipment?
>
> A. I am not in a position from the experience that I have to testify to that.

[Dkt. No. 71-1, p. 46, line 9 to p. 47, line 8].

Experience may provide the basis for qualification as an expert, but experience is not a methodology. Methodology is the process by which the expert relates his experience to the facts at hand in order to reach an expert opinion. Briscoe failed to explain how his experience informed his analysis and produced the conclusions he seeks to sponsor. In this regard, he has failed to meet the standard of Rule 702.

**(b) 'Reasoning to the Best Inference' as Methodology.**

In the Response to the Motion to Strike Expert, Plaintiff states that Briscoe actually used a methodology called "reasoning to the best inference." This is also referred to as "differential analysis," or – in the medical field, where it is most often used – differential diagnosis. Differential analysis is

> more aptly characterized as a process of reasoning to the best inference.... [The] experts must reason, as it were, backwards to the cause of a single [event], and to do so requires a process of eliminating possible causes as improbabilities until the most likely one is identified. Experts must provide objective reasons for eliminating alternative causes when

13

> employing a 'differential analysis.' Furthermore, the inference to the best explanation must first be in the range of possible causes; there must be some independent evidence that the cause identified is the type that could have been the cause.

*Cruz v. Bridgestone/Firestone North American Tire, LLC* 388 Fed.Appx. 803, 807, 2010 WL 2881524, *3 (10th Cir. July 22, 2010) (*quoting Bitler v. A.O. Smith Corp.*, 400 F.3d 1227, 1238, n.5 & n.6 (10th Cir. 2004), *cert. denied*, 546 U.S. 926 (2005)).

Here, Briscoe has relied entirely on Plaintiff's account of events leading up to the accident; Briscoe has not identified any independent evidence of a product defect. Nor has Briscoe offered objective reasons for eliminating alternative causes – including operator error.

Differential analysis is a recognized scientific/technical methodology. In the medical field it has been described thus:

> The first step in the diagnostic process is to compile a comprehensive list of hypotheses that might explain the set of salient clinical findings under consideration.... The issue at this point in the process is which of the competing causes are *generally* capable of causing the patient's symptoms or mortality. Expert testimony that rules in a potential cause that is *not* so capable is unreliable.... "It is important to realize that a fundamental assumption underlying [differential diagnosis] is that the final, suspected 'cause' ... must actually be capable of causing the injury."

*McClain v. Metabolife Intern., Inc.*, 401 F.3d 1233, 1253 (11th Cir. 2005) (*quoting Clausen v. M/V NEW CARISSA*, 339 F.3d 1049, 1057-58 (9th Cir. 2003) (internal citations omitted)).

In whatever context it is used, the technique starts by identifying the possible causes for an accident or other event and then seeks to eliminate each of these potential causes until reaching one that cannot be ruled out or is deemed to be the most likely of

those possible causes left.  *Westberry v. Gislaved Gummi AB*, 178 F.3d 257, 262 (4th Cir. 1999); *Baker v. Dalkon Shield Claimants Trust*, 156 F.3d 248, 252-53 (1st Cir. 1998); *Kannankeril v. Terminix Int'l, Inc.*, 128 F.3d 802, 807 (3d Cir. 1997); *Heller v. Shaw Indus., Inc.*, 167 F.3d 146, 154-55 (3d Cir. 1999) (differential analysis consists of a testable hypothesis, has been peer reviewed, contains standards for controlling its operation is generally accepted, and is used outside of the judicial context") (internal quotation marks omitted).

Briscoe did not correctly perform a differential analysis.  He did not identify the possible causes of Dean's accident and did not seek to eliminate implausible causes.  Machine defect may be a possible cause, but clearly so is operator error.  To eliminate this latter possibility, Briscoe could have tried to duplicate Plaintiff's claimed behavior and see if, in fact, the spindle remained turning.  Briscoe never attempted to duplicate Plaintiff's story and never eliminated human error as a possible cause.[5]  Briscoe did not eliminate *any* possible cause of the accident.  He simply gave full credence to Plaintiff's recitation of events and concluded that under those circumstances the only possible explanation for the accident was a product defect.   [Dkt. No. 71-1, pp. 44, line 21 to p. 46, line 5].

> Q. Isn't it fair to say that you're assuming there's a defect in the machine? You don't have evidence of the defect?
>
> A. It's the only conclusion.

---

[5] This failure is grievous given the fact that Briscoe knew that a previous expert for Plaintiff *had* attempted to duplicate Plaintiff's account of the accident – but was unsuccessful.  [Dkt. No. 71-1, p. 54, lines 2-10].

> Q. But you can't testify that there's a defect in the machine?
>
> A. I can testify that given Mr. Dean's testimony and given the nature of these machines, that I know through my years of experience, that that spindle should not have been turning at that point in time.
>
> Q. I'm not arguing with you whether the spindle should be or should not have been moving. What I'm saying is, is that situation attributable to a defect.
>
> A. Absolutely.
>
> Q. -- or is it attributable to something else?
>
> A. It's the only possible explanation.
>
> Q. But you can't identify what it is, can you?
>
> A. Not specifically, but that doesn't matter because it should not have been turning.

[Dkt. No. 71-1, p. 102, line 24 to p. 103, line 22].

This opinion is not based on any technical or scientific methodology. Briscoe did not inspect the machine at issue and made no effort to duplicate the sequence of events Plaintiff described. In his deposition, he was unable to describe any principled methodology underlying his opinions.

Briscoe's reliance on Plaintiff's account of what happened also calls into question the "data" he relied upon, Fed.R.Evid. 703, and the reliability of his opinions. Since he did not test Plaintiff's version of what happened by trying to replicate the sequence of events, Briscoe did nothing more than blindly accept his client's version of events. This alone is sufficient to render his opinion objectionable. *See Paoli*, 35 F.3d at 762 (where experts based their conclusions solely on the plaintiff's self-report of illness in

16

preparation for litigation, court acted within its discretion in excluding the testimony as "based on an unreliable source of information.").

Briscoe's proffered testimony fails to meet the tests of Fed.R.Evid 702, 703, *Daubert*, and *Kumho*. His opinions are little more than Plaintiff's testimony "dressed up and sanctified as the opinion of an expert." *Viterbo*, 826 F.2d at 424. This renders Briscoe's proffered opinions completely unreliable.

For these reasons, the Motion to Strike Expert is hereby **GRANTED.**

**IT IS SO ORDERED** this 11th day of January 2012.

_____
Paul J. Cleary
United States Magistrate Judge